IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | |
|---|---|
| ARTHUR HAIRSTON, | * |
| Plaintiff, | * |
| v. | *   Case No. 1:23-cv-03455-SAG |
| SOCIAL SECURITY ADMINISTRATION, *et al.*, | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, the Social Security Administration ("SSA" or the "Agency"), "Ms. Martin," Melissa Feldhan, and former SSA Commissioner Andrew Saul (collectively, "Defendants"), by and through undersigned counsel, Erek L. Barron, United States Attorney for the District of Maryland, and Megan L. Micco, Assistant United States Attorney for that District, submit the following points and authorities in support of their Motion to Dismiss or, in the Alternative, for Summary Judgment:

**I.  INTRODUCTION**

In this action, *pro se* Plaintiff Arthur Hairston ("Plaintiff") alleges that the SSA has refused to provide him with "an original copy of [his Benefits Planning Query ("BPQY")]" and asks this Court to "order [the] SSA to provide the document requested" pursuant to the Freedom of Information Act ("FOIA"). ECF No. 1 at 2. However, Plaintiff's Civil Complaint (ECF No. 1) (the "Complaint") fails for numerous reasons and must be dismissed. First, as a preliminary matter, Plaintiff's claim under the FOIA is improper because Plaintiff requests records from his own claim file maintained by the SSA, and such claim is governed by the Privacy Act of 1974 (the "Privacy

Act"), 5 U.S.C. § 552a, not the FOIA. Second, Plaintiff's Complaint improperly names Agency employees as defendants despite the fact that the Privacy Act authorizes suit against federal agencies only. Third, this Court lacks subject-matter jurisdiction over Plaintiff's claim because Plaintiff failed to exhaust his administrative remedies as he did not submit a Privacy Act appeal to the Executive Director of the SSA's Office of Privacy and Disclosure ("OPD"), as required by the SSA's Privacy Act regulations. Finally, even if Plaintiff had exhausted his administrative remedies, Plaintiff's claim is moot because the SSA complied with Plaintiff's request and has provided Plaintiff with all available records responsive to the request.

Accordingly, the Court should dismiss "Ms. Martin," Melissa Feldhan, and former SSA Commissioner Andrew Saul from this action and should further dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted or, in the alternative, enter summary judgment in favor of the Agency and against Plaintiff.

II.     **UNDISPUTED FACTS**

On March 9, 2022, Plaintiff mailed a request that he labeled a "Freedom of Information Request" to the SSA's OPD, in which he requested his "original award letter of (1991)" and his "original issued BPQY of (1991)." Exhibit ("Ex.") 1, Plaintiff's March 9, 2022 "Freedom of Information Request," at p. 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 3; Ex. 3, Declaration of Michelle L. Christ ("Christ Decl."), at ¶ 8. The BPQY is a SSA application that provides beneficiaries and other appropriate authorized representatives with a snapshot of a beneficiary's disability benefits and work history as stored in Agency electronic records. *See* SOCIAL SEC. ADMIN., BENEFITS PLANNING QUERY HANDBOOK (BPQY) 3 (2023), https://www.ssa.gov/disabilityresearch/documents/BPQY_Handbook.pdf; *see also* Ex. 3, Christ Decl., at ¶ 8 n.4. An individual may request a BPQY by contacting their servicing Field Office ("FO") or calling the Agency's 1-800 telephone number. *See* SOCIAL SEC. ADMIN., BENEFITS PLANNING QUERY HANDBOOK

2

(BPQY) 3 (2023); *see also* Ex. 3, Christ Decl., at ¶ 8 n.4.  The SSA received Plaintiff's March 9, 2022 request on March 14, 2022.  Ex. 1, Plaintiff's March 9, 2022 "Freedom of Information Request," at p. 3.

On June 15, 2022, Melissa Feldhan, the former Acting Privacy Officer in the SSA OPD, responded to Plaintiff's request via letter.  *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶¶ 8–10.  In the letter, the OPD noted that Plaintiff was requesting records from his own claim file, which is a Privacy Act request, and explained that the OPD did "not have the information [Plaintiff] requested available in [the OPD's] office."  *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶¶ 8–10.  Because the OPD does not maintain the records Plaintiff requested in its office, it directed Plaintiff to visit his local SSA office to make his request or to utilize the Agency's available online services by creating an account on "my Social Security (mySSA)."  *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶¶ 9–10.  The OPD further instructed Plaintiff that his "local [SSA] office has jurisdiction over the records necessary to process [his] request," that he needed to "resubmit" his request to such office, and that he must "bring proper identification and a copy of [the June 15, 2022] letter" when he visited his local SSA office.  *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶ 10.  The OPD's response letter also provided Plaintiff with information on how he could determine the location of his nearest SSA office via the SSA website's office locator and through a toll-free phone number.  *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶ 10.

Plaintiff subsequently contacted his servicing FO in Martinsburg, West Virginia (the "Martinsburg FO") regarding his records request. *See* ECF No. 1-2 at p. 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 1. According to Plaintiff, on July 20, 2022, he had a "conversation" with "Ms. Martin,"[1] and the next day, July 21, 2022, he sent her a letter.[2] *See* ECF No. 1-2 at p. 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 1. In his July 21, 2022 letter, Plaintiff requested "documentation explaining that [he] no longer fall[s] under medical exams." Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 5. However, at no time in June, July, or August 2022 did Plaintiff visit the Martinsburg FO in person to request his records, *see* Ex. 5, Thompson Decl., at ¶ 4, nor does he allege that he did, *see generally* ECF Nos. 1, 1-2; Ex. 2, Plaintiff's August 15, 2022 Letter, at pp. 1, 5.

On July 20, 2022, the Martinsburg FO mailed two (2) benefit verification letters to Plaintiff, which provided Plaintiff's disability onset date and stated that he was no longer subject to medical reviews due to his age. *See* Ex. 2, Plaintiff's August 15, 2022 Letter, at pp. 6–7. Subsequently, on August 15, 2022, Plaintiff mailed to Ms. Martin at the Martinsburg FO a letter requesting his "original BPQY and award letter or in the alternative a new BPQY consi[ste]nt with the recent letter sent . . . [from the] Jamaica Queens SSA." ECF No. 1-2 at 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 1; *see also* Ex. 5, Thompson Decl., at ¶ 6. The Martinsburg FO determined that no electronic or paper copies of Plaintiff's original BPQY and award letter exist because those documents would have been created and/or issued in 1991 and there are no records in Plaintiff's

---

[1] Upon information and belief, "Ms. Martin" is Vanessa Jensen Martin, the former District Manager of the Martinsburg FO. Ex. 5, Declaration of Maurice J. Thompson ("Thompson Decl."), at ¶ 2.

[2] Plaintiff's letter is incorrectly dated July 21, 2020. *See* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 5. The correct date is July 21, 2022. *See* ECF No. 1-2 at 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 1.

4

electronic claims folder prior to 1994. *See* Ex. 5, Thompson Decl., at ¶ 8. Additionally, the Martinsburg FO determined that Plaintiff's paper claims folder was destroyed in 2021, pursuant to the Agency's records retention policy. *See id.* The Martinsburg FO further determined that the FO in Jamaica, Queens did not send any letters to Plaintiff. *Id.* at ¶ 7. While Plaintiff's August 15, 2022 letter states that he received two letters from an SSA FO in Jamaica, Queens, the letters purportedly from the SSA FO in Jamaica, Queens that are attached by Plaintiff to the August 15, 2022 letter are the two (2) July 20, 2022 benefit verification letters that the Martinsburg FO mailed to Plaintiff. *See* Ex. 2, Plaintiff's August 15, 2022 Letter, at pp. 6–7.

The SSA's OPD maintains all Privacy Act and FOIA requests received by the OPD within the FOIAXpress system and tracks all Privacy Act and FOIA appeals in that system. Ex. 3, Christ Decl., at ¶ 6. If an individual is denied access to their records by the SSA and appeals the denial to the Executive Director of the OPD pursuant to the requirements in the federal regulations, the request for appeal is also maintained in the FOIAXpress system. *Id.* The FOIAXpress system tracks requests by case tracking number and by the requestor's name. *Id.* The OPD performed a thorough search of the FOIAXpress system using the term "Hairston"; the search revealed that OPD has not received any Privacy Act or FOIA appeals from Plaintiff. *Id.* at ¶ 13.

On February 13, 2024, the Agency mailed Plaintiff a copy of his current BPQY and informed Plaintiff that his original BPQY and award letter are no longer maintained by the Agency, consistent with Federal records retention requirements. Ex. 5, Thompson Decl., at ¶¶ 8–9. The response was mailed by both certified and regular U.S. mail. *Id.* at ¶ 9.

### III.   LEGAL STANDARDS

#### A.   <u>Motion to Dismiss for Lack of Subject-Matter Jurisdiction – Federal Rule of Civil Procedure 12(b)(1)</u>

A motion to dismiss based on lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) raises the question of whether the court has the competence or authority to hear and decide a particular case. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 299 (D. Md. 2005). As a result, the court "generally may not rule on the merits of a case without first determining that it has the jurisdiction over the category of claim in suit (subject-matter jurisdiction)." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998)). The plaintiff bears the burden of proving that subject-matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The requirement that a plaintiff establish subject-matter jurisdiction "as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co.*, 523 U.S. at 95 (some internal quotation marks omitted). For that reason, "[t]he objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) (citing Rule 12(h)(3)).

When a defendant challenges subject-matter jurisdiction, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans*, 166 F.3d at 647 (quoting *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d 765, 768 (4th Cir. 1991)). The court may properly grant a motion to dismiss for lack of subject-matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799.

6

**B.     Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted – Federal Rule of Civil Procedure 12(b)(6)**

A challenge under Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted. Although a court must accept as true all the factual allegations in the complaint, legal conclusions drawn from those facts are not afforded deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim). Within this framework, a complaint must allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 663.

**C.     Motion for Summary Judgment – Federal Rule of Civil Procedure 56**

"A responsive pleading captioned as a motion to dismiss or, in the alternative, as a motion for summary judgment puts all parties on notice that a court could construe the motion either way." *Newsome v. Williams*, No. 3:15CV141, 2016 WL 11431790, at *2 (N.D. W. Va. May 26, 2016), *report and recommendation adopted*, No. 3:15-CV-141, 2016 WL 4153615 (N.D. W. Va. Aug. 5, 2016) (quoting *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260 (4th Cir. 1998)). Summary judgment is appropriate when "'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law,' based on the 'materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials.'" *Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 433 (4th Cir. 2013) (quoting Fed. R. Civ. P. 56(a), (c)). Once

7

the movant presents a properly supported motion for summary judgment, the burden shifts to the non-movant to set forth specific facts, through affidavits or other evidence, that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). This burden is "particularly strong when the non-moving party [also] bears the burden of proof." *See Caussade v. Brown*, 924 F. Supp. 693, 696 (D. Md. 1996) (citations omitted). The non-moving party "cannot create a genuine issue through mere speculation or the building of one inference upon another." *Id.* at 696–97 (quoting *Beale v. Hardy*, 769 F.2d 2213, 2214 (4th Cir. 1985)).

IV.  **ARGUMENT**

    A.  **Plaintiff's Claim Is Governed by the Privacy Act, Not the FOIA, and Should Be Construed Accordingly.**

Preliminarily, although Plaintiff's Complaint alleges jurisdiction and purports to bring a claim pursuant to the FOIA, 5 U.S.C. § 552, *see* ECF No. 1, the Agency FOIA regulations explicitly provide, in relevant part, as follows: "Requesting your own records. If you are an individual and request records, then *to the extent you are requesting your own records in a system of records, we will handle your request under the Privacy Act*." 20 C.F.R. § 402.15(b) (emphasis added). Here, Plaintiff requested that the SSA provide him with his "original award letter of (1991)" and "original issued BPQY of (1991)," both of which are records maintained by the SSA in Plaintiff's own claim file, *see, e.g.*, Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 4, OPD's June 15, 2022 Response Letter; Ex. 5, Thompson Decl., at ¶ 8. Accordingly, because Plaintiff requested records from his own claim file and those records are maintained in the Agency system of records, Plaintiff's claim is governed by the Privacy Act, not the FOIA, and must be construed as a Privacy Act claim. *See* 5 U.S.C. § 552a; 20 C.F.R. § 402.15(b).

**B.      Because the Agency Is the Only Proper Defendant in a Privacy Act Case, the Individual Defendants Must Be Dismissed.**

Because Plaintiff's claim is a Privacy Act claim, rather than a FOIA claim, the provisions of the Privacy Act control. *See* 5 U.S.C. § 552a. Subsection (g)(1) of 5 U.S.C. § 552a expressly provides that an "individual may bring a civil action *against the agency*" for an alleged Privacy Act violation. 5 U.S.C. § 552a(g)(1) (emphasis added). Consistent with the plain language of 5 U.S.C. § 552a(g)(1), it is well-established in this District and others that "civil actions under the [Privacy] Act are properly commenced only against agencies, not individuals." *Walker v. Gambrell*, 647 F. Supp. 2d 529, 536 (D. Md. 2009) (citing 5 U.S.C. § 552a(g)(1)); *see also Nichols v. Green*, No. 3:23-3234-MGL-PJG, 2023 WL 6619369, at *2 (D.S.C. Oct. 11, 2023) ("[A] federal agency is the only proper defendant under the [Privacy] Act and therefore, individuals may not be named as defendants in such actions." (citing 5 U.S.C. § 552a(g)(1))); *Bloch v. Exec. Office of the President*, 164 F. Supp. 3d 841, 853–54 (E.D. Va. 2016) (noting that "the remedial provisions of the Privacy Act apply only to federal agencies, not to individuals"). Here, Plaintiff improperly names "Ms. Martin," Melissa Feldhan, and former SSA Commissioner Andrew Saul[3] as defendants in this case. ECF No. 1. These individuals, all of whom are or were formerly Agency

---

[3] Defendants note that, "[i]n certain cases it can be proper to name the head of the agency as a defendant where he [or she] is sued, for example, in his [or her] official capacity as custodian of records; however, it is never proper to name subordinate employees." *Walker*, 647 F. Supp. 2d at 536 (citation omitted). Here, although Andrew Saul was formerly the Commissioner of the SSA and arguably would have been a proper defendant during the time he held that position, he was not the SSA Commissioner at the time Plaintiff filed this action on December 20, 2023, nor is he the current SSA Commissioner. *See Social Security History – SSA Commissioners*, SOC. SEC. ADMIN., https://www.ssa.gov/history/saul.html (last visited Feb. 21, 2024) (reflecting that Andrew Saul served as SSA Commissioner from June 17, 2019 through July 9, 2021); *see also Commissioner*, SOCIAL SEC. ADMIN., https://www.ssa.gov/agency/commissioner/ (last visited Feb. 21, 2024) (reflecting that Martin O'Malley is currently the SSA Commissioner). Thus, former Commissioner Saul is not a proper defendant in this action.

employees,[4] are not proper defendants in a Privacy Act case pursuant to 5 U.S.C. § 552a(g)(1). Accordingly, they must be dismissed.

      **C.**    **This Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claim Because Plaintiff Failed to Exhaust His Administrative Remedies.**

"The Privacy Act provides four different bases for a cause of action against a federal agency." *Lewis v. Dep't of the Treasury*, No. TDC-20-0494, 2021 WL 4290635, at *5 (D. Md. Sept. 21, 2021). Relevant here, 5 U.S.C. § 522a(g)(1)(A) and (B) provide causes of action when an agency "(A) makes a determination under [5 U.S.C. § 552a(d)(3)] not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; [and] (B) refuses to comply with an individual request under [5 U.S.C. § 552a(d)(1)]." 5 U.S.C. § 552a(g)(1)(A)–(B); *see also Lewis*, 2021 WL 4290635, at *5. "The first two causes of action, § 552a(g)(1)(A)–(B), specifically reference requests made to an agency about an individual's records and thus 'incorporate exhaustion requirements.'" *Lewis*, 2021 WL 4290635, at *5 (quoting *Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990)); *see also Pollack v. Dep't of Justice*, 49 F.3d 115, 117 n.1 (4th Cir. 1995) (stating that an individual's Privacy Act claim "was not properly before the district court" because the individual "did not first exhaust administrative remedies provided under the Privacy Act"). "For such causes of action, an individual 'must initially seek an amendment or access from the agency and even seek review within the agency before coming to court.'" *Lewis*, 2021 WL 4290635, at *5 (quoting *Haase*, 893 F.2d at 373).

---

[4] As noted previously, "Ms. Martin" is the former District Manager of the Martinsburg SSA FO, *see* Ex. 5, Thompson Decl., at ¶ 2, and Melissa Feldhan is the former Acting Privacy Officer for the SSA OPD, *see* Ex. 3, Christ Decl., at ¶ 9. As noted above, Andrew Saul is the former SSA Commissioner. *See supra* n.3.

Relevant here, Agency Privacy Act regulations outline the procedure for appealing a denial of access by the SSA under the Privacy Act. *See* 20 C.F.R. § 401.70(c). 20 C.F.R. § 401.70(c) states that an appeal of a Privacy Act access denial must be sent to the "Office of the General Counsel, Office of Privacy and Disclosure, Social Security Administration, Attn: Executive Director, 6401 Security Boulevard, Baltimore, MD 21235." Once an appeal is filed, the Executive Director, or his or her designee, will review the appeal request and send a notice to the appellant explaining the decision on the appeal. 20 C.F.R. § 401.70(d). The notice will also explain the appellant's right to have the decision reviewed in a Federal district court if the individual disagrees with the decision. *Id.*

Here, Plaintiff does not allege that he filed an appeal of a Privacy Act access denial or a FOIA denial, *see generally* ECF No. 1, and a thorough search of the SSA OPD's FOIAXpress system, which maintains all Privacy Act and FOIA requests received by the OPD and tracks all Privacy Act and FOIA appeals filed with the OPD, using the search term "Hairston" demonstrated that Plaintiff did not and has not filed any such appeals, *see* Ex. 3, Christ Decl., at ¶¶ 6, 13. Rather than adhere to the appeal procedures outlined in 20 C.F.R. § 401.70(c), Plaintiff merely followed up with the SSA FOIA Public Liaison on his initial misdirected request via email on June 29, 2022, July 11, 2022, August 15, 2022, and December 6, 2022. *See* Ex. 3, Christ Decl., at ¶ 12.[5] Thus, Plaintiff did not exhaust his administrative remedies prior to filing this action, and the Court lacks subject-matter jurisdiction over Plaintiff's claim as a result. Accordingly, the claim must be dismissed.

---

[5] The SSA FOIA Public Liaison properly redirected Plaintiff's numerous emails to the Martinsburg FO. Ex. 3, Christ Decl., at ¶ 12.

**D.     Plaintiff's Claim Is Moot Because the Agency Complied with Plaintiff's Request and Has Provided Plaintiff With All Available Records Responsive to The Request.**

Even if this Court did have jurisdiction to consider Plaintiff's claim, and it does not, Plaintiff's claim is moot. Article III, section 2 of the United States Constitution "confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). An actual controversy must exist "at all stages of review, not merely at the time the complaint is filed." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732–33 (2008) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). A case is moot if the "issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969); *see also United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell*); *Watkins v. Napolitano*, No. RWT 11-2257, 2012 WL 4069763, at *2 (D. Md. Sept. 14, 2012) (same). Thus, when changes occur during litigation that eliminate the petitioner's interest in the outcome of the case or the petitioner's need for the requested relief, the case must be dismissed as moot. *See Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002) ("[O]ne such circumstance mooting a claim arises when the claimant receives the relief he or she sought to obtain through the claim."). Under the Privacy Act, an access claim pursuant to 5 U.S.C. § 552a(g)(1)(B) only exists if the government failed to comply with a request for records; once a request is complied with and the responsive records have been produced, a Privacy Act access claim is moot. *See Biondo v. Dep't of Navy*, 928 F. Supp. 626, 631 (D.S.C. 1995), *aff'd*, 86 F.3d 1148 (4th Cir. 1996) (concluding that the Privacy Act access action was moot because the court had "already ordered full access to the records to the extent practicable").

Here, the Agency has complied with and provided documents responsive to Plaintiff's

12

request on numerous occasions, including as recently as February 13, 2024. On June 15, 2022, the former Acting Privacy Officer for the SSA OPD, Melissa Feldhan, mailed Plaintiff a letter advising him that the OPD did not have the information requested available in OPD's office, explaining that his "local [SSA FO] has jurisdiction over the records necessary to process [his] request," directing him to "resubmit" his request to his local SSA FO, and instructing him on how to make a proper request for the records with the FO. *See* Ex. 4, OPD's June 15, 2022 Response Letter; *see also* Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 4; Ex. 3, Christ Decl., at ¶¶ 8–10. However, Plaintiff did not comply with those instructions. *See* Ex. 3, Christ Decl., at ¶¶ 8–12; Ex. 5, Thompson Decl., at ¶ 4.

On July 20, 2022, Plaintiff had a "conversation" with "Ms. Martin," and the next day, July 21, 2022, he sent her a letter requesting "documentation explaining that [he] no longer fall[s] under medical exams." Ex. 2, Plaintiff's August 15, 2022 Letter, at pp. 1, 5. On July 20, 2022, the Martinsburg FO satisfied Plaintiff's request when it issued and mailed to him two (2) benefit verification letters, which provided his disability onset date and stated that he was no longer subject to medical reviews due to his age. Ex. 2, Plaintiff's August 15, 2022 Letter, at pp. 6–7. On August 15, 2022, Plaintiff mailed to Ms. Martin a letter requesting his "original BPQY and award letter or in the alternative a new BPQY consi[ste]nt with the recent letter sent . . . [from the] Jamaica Queens SSA." ECF No. 1-2 at 1; Ex. 2, Plaintiff's August 15, 2022 Letter, at p. 1; *see also* Ex. 5, Thompson Decl., at ¶ 6. However, the Martinsburg FO determined that no electronic or paper copies of Plaintiff's original BPQY and award letter exist because those documents would have been created and/or issued in 1991 and there are no records in Plaintiff's electronic claims folder prior to 1994. *See* Ex. 5, Thompson Decl., at ¶ 8. Additionally, the Martinsburg FO determined that Plaintiff's paper claims folder was destroyed in 2021, pursuant to the Agency's records

retention policy. *See id.* On February 13, 2024, the Agency mailed Plaintiff a copy of his current BPQY and informed Plaintiff that his original BPQY and award letter are no longer maintained by the Agency, consistent with Federal records retention requirements. *Id.* at ¶¶ 8–9. The response was mailed by both certified and regular U.S. mail. *Id.* at ¶ 9.

Thus, because the Agency has provided Plaintiff with all available records responsive to his request, including the benefit verification letters and the only BPQY record that exists in the Agency's records, and informed Plaintiff that the original BPQY and award letter do not exist in the Agency's records, Plaintiff's claim is now moot and must be dismissed.

## V.     CONCLUSION

For the foregoing reasons, the Court should dismiss "Ms. Martin," Melissa Feldhan, and former SSA Commissioner Andrew Saul from this action and should further dismiss the Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief may be granted or, in the alternative, enter summary judgment in favor of the Agency and against Plaintiff.

Dated: February 21, 2024                              Respectfully submitted,

                                                     Erek L. Barron
                                                     United States Attorney

                                          By:        /s/ Megan L. Micco
                                                     Megan L. Micco (Bar No. 20936)
                                                     Assistant United States Attorney
                                                     U.S. Attorney's Office, District of Maryland
                                                     36 S. Charles Street, Suite 400
                                                     Baltimore, Maryland  21201
                                                     Telephone: (410) 209-4800
                                                     Megan.Micco@usdoj.gov

                                                     *Counsel for Defendants*